IN THE UNITED STATES DISTRICT COURTS
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MISTY WHITE o/b/o                                        PLAINTIFF
S.L.W.

      v.                          CIVIL NO. 04-2150

JO ANNE B. BARNHART, Commissioner
Social Security Administration                           DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Misty White, brings this action on behalf of her minor daughter, S.L.W., seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration (Commissioner) denying S.L.W.'s application for child's supplemental security income (SSI) benefits under Title XVI of the Social Security Act.

## I. Background:

Plaintiff protectively filed an application for SSI on S.L.W.'s behalf on April 28, 1999, alleging that S.L.W. was disabled due to juvenile diabetes mellitus. (Tr. 74-76). By a decision of an Administrative Law Judge ("ALJ") dated May 25, 2000, S.L.W. was found to have been disabled as of March 23, 1999. (Tr. 163-170). However, pursuant to a continuing disability review process, S.L.W. was determined to no longer be disabled as of September 1, 2002. (Tr. 171-177). A second administrative hearing was held on October 9, 2003, at which time plaintiff and S.L.W. were present and represented by counsel. (Tr. 19-57). On March 9, 2004, the ALJ issued a written decision finding that S.L.W. had experienced medical improvement and was no longer under a disability as defined in the Act. (Tr. 8-16).

On May 20, 2004, the Appeals Council declined to review this decision. (Tr. 3-5). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent

of the parties. Both parties were afforded the opportunity to file appeal briefs, however, plaintiff chose not to do so. (Doc. # 11).

**II. Discussion:**

The court's review is limited to whether the decision of the Commissioner to deny benefits to the plaintiff is supported by substantial evidence on the record as a whole. *See Ostronski v. Chater*, 94 F.3d 413, 416 (8th Cir. 1996). Substantial evidence means more than a mere scintilla of evidence, it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Pearles*, 402 U.S. 389, 401 (1971). The court must consider both evidence that supports and evidence that detracts from the Commissioner's decision, but the denial of benefits shall not be overturned even if there is enough evidence in the record to support a contrary decision. *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996).

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996, P.L. 104-193, revised the standards for determining childhood disability. *See* 42 U.S.C. § 1382c(a)(3)(c)(I). Effective January 2, 2001, the Commissioner promulgated "final" revised rules in response to public comments regarding the implementation of the revised rules. *See* Childhood Disability Provisions, 65 Fed. Reg. 54747 (September 11, 2000)(to be codified at 20 C.F.R. Pts. 404, 416.) Under these "final" rules there is now a single method, rather than four separate methods, for evaluating functional equivalence based only on six domains of functioning. 20 C.F.R. § 416.926a(b). In the present case, in the decision dated March 9, 2004, the ALJ correctly used the "final" rules in making his disability determination.

The regulations implementing the revised standards prescribe a three-step process for making the disability determination. First, the ALJ must determine whether the child has engaged in substantial gainful activity. *See* 20 C.F.R. 416.924(b). Second, the ALJ must determine whether the

2

child has a severe impairment or combination of impairments. *See* 20 C.F.R. 416.924(c). Third, the ALJ must determine whether the severe impairment(s) meets, medically equals, or functionally equals a listed impairment. *See* 20 C.F.R. § 416.924(d). In the present case, the ALJ found that S.L.W. 's claim failed at step three, as S.L.W. did not have an impairment that met or medically or functionally equaled a listed impairment.

After reviewing the evidence of record, the undersigned finds that substantial evidence does not support the ALJ's findings concerning S.L.W.'s ability to move about and manipulate objects and her health and physical well-being. Specifically, the ALJ found that S.L.W. had no limitations regarding her ability to move about and manipulate objects. (Tr. 15). However, the evidence revealed that S.L.W. was limited regarding her ability to perform physical activities. (Tr. 237). Plaintiff testified that S.L.W.'s activities had to be carefully monitored for insulin calibration. According to plaintiff, S.L.W.'s blood glucose levels tended to drop drastically when she was active. Thus, the least bit of activity would require an adjust to her medication. However, this was not considered by the ALJ. Instead, he merely stated that there were no limitations in this area. As S.L.W. clearly experienced some limitations in this area, on remand, the ALJ is directed to reconsider this domain of functioning and the resulting limitations.

In addition, we note that the ALJ found "less than marked" limitations in the domain of health and physical well-being. (Tr. 15). He noted that S.L.W. had responded well to her medications. Although she continued to experience acute exacerbations of her juvenile diabetes mellitus symptoms, required periodic adjustments to her medications, and necessitated the use of an insulin pump, which impeded her ability to participate in some physical activities at school and home, the ALJ concluded that her condition was unlikely to further impact her activity level. (Tr. 15). However, we note that plaintiff's progress notes from Arkansas Children's Hospital dated October 16, 2003, and July 17,

3

2003, rated S.L.W.'s diabetes control level as only fair, indicating that her A1c[1] continued to exhibit slight to moderate elevation at 8.7%[2] and 9.8%, respectively. (Tr. 363, 369). We are also aware of the blood-glucose test results covering S.L.W.'s readings from September 9, 2003, until September 21, 2003, which reveal that she experienced lows as low as 40 and highs as high as 392. (Tr. 359). Although we note that these readings are not documented in the records submitted by S.L.W.'s treating physicians, we do believe that the ALJ should have developed the record further concerning this issue. Plaintiff testified that S.L.W.'s glucose monitor stored her readings in its memory. A minimal amount of research on the issue of glucose monitoring revealed that these monitors are created to store this information so that the patient's doctor can download the information directly from the monitor. *See* ONE TOUCH ULTRA OWNER'S MANUAL, *Using the Meter Memory*, *at* www.lifescan.com. Therefore, the glucose values submitted by plaintiff were capable of verification via a report from S.L.W.'s treating physician. Accordingly, on remand, the ALJ is directed to confer with S.L.W.'s treating physicians concerning her glucose values during the relevant time period.

We also find that remand is necessary to allow the ALJ to obtain a childhood disability assessment from S.L.W.'s treating physicians. No such assessment is contained in the record. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984) (If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise

---

[1]The A1c test is used primarily to monitor the glucose control of diabetics over time. *See* R. Morgan Griffin, *Beyond Blood Sugar: Testing A1c*, *at* www.webmd.com. This test gives a picture of the average amount of glucose in the blood over the past two to three months. *Id*. It can help both the patient and doctor determine whether the measures they are taking to control the patient's diabetes are successful or need to be adjusted. *Id*.

[2]Records indicate that the ideal A1c level for a child between ages five and eleven is 8.5% or lower. (Tr. 369).

4

inquiry to the physician so as to clarify the record). Therefore, based on the current evidence of record, we do not find substantial evidence supporting the ALJ's RFC determination.

On remand, the ALJ is directed to address interrogatories to the physicians who have evaluated and/or treated S.L.W., asking the physicians to review her medical records; to complete a mental and physical RFC assessment regarding plaintiff's capabilities during the time period in question; and, to give the objective basis for their opinions, so that an informed decision can be made regarding S.L.W.'s RFC during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

### III. Conclusion:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to S.L.W., should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 8th day of September 2005.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)